## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES COMMODITY FUTURES | : | |
| TRADING COMMISSION, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Case No. 3:08-CV-0064 (MRK) |
| | : | |
| DIEGO MARIANO ROLANDO a/k/a | : | |
| ROCLERMAN and ROC d/b/a IA | : | |
| TRADING.COM, INC., | : | |
| | : | |
| Defendant. | : | |

### Ruling and Order on Objections to the Receiver's Distribution Plan

On December 10, 2008, the Court held a hearing on the Receiver's Motion and Combined

Second Report and Application for an Order Approving his Equitable Plan of Distribution [doc. #

50]. The Court heard argument on the objections to the Receiver's Plan of Distribution (the "Plan").

Before the hearing, the Court had carefully reviewed the objections submitted as well as the

Receiver's response. At the hearing, the Commodities Futures Trading Commission stated that it

supported the Receiver's Plan and the Receiver's disposition of the various objections. The Court

also heard from an attorney for a number of objectors. At the conclusion of the hearing, the Court

ruled orally on the objections, overruling the objections and approving the Plan. The purpose of this

Ruling and Order is to summarize the Court's rationale for its ruling on objections. The Court also

refers the parties to the transcript of the hearing for a further explanation of the Court's ruling.

The Court addressed the objections in the order in which the Receiver had grouped them in

his Reply to Responses and Objections to the Combined Second Report and Application of the

Receiver for an Order Approving his Equitable Plan of Distribution [doc. # 77].

      **1.**       **Disputed Deposits and Withdrawals.** Approximately 10 investors had submitted

additional information to the Receiver regarding their investments, and the Receiver reported that he recommended adjustments be made for these objectors. Furthermore, the Receiver stated that he was in the process of entering into Stipulations with these objectors. The Court reviewed and approved two such stipulations at the hearing. The Court agrees with the changes the Receiver has made based on the information provided by these objectors.

2.      **Disputed Internal Transfer.**  Counsel for this objector and the Receiver reported progress in resolving this objection. They will continue to discuss this issue and will seek to resolve it. If they cannot do so, they will submit this dispute to the Court for its resolution. As a consequence, the Court did not rule on this objection.

3.      **Late Depositors.**  The facts regarding these objections are as follows. Interactive Brokers, LLC ("IB") began an internal investigation of Diego Mariano Rolando a/k/a/ Roclerman and ROC d/b/a IA Trading.com Inc. (collectively, "Mr. Rolando") on November 13, 2007 on the complaint of one of his customers and instituted procedures on that date to prevent unauthorized withdrawals from IB accounts. The Receiver calls this action by IB a "hold." Withdrawals were permitted and were made, but it was more difficult to do so after November 13, 2007. On November 28, 2007, IB effectively froze Mr. Rolando's IB accounts, and thereafter, no withdrawals, deposits, or transfers were permitted. The Receiver refers to this action as the "freeze." On January 15, 2008, the Court entered a Statutory Restraining Order [doc. # 6] requiring all financial institutions to immediately freeze Mr. Rolando's accounts and funds.

A number of the customers of Mr. Rolando made deposits with IB's bank between November 13, 2007 and November 28, 2007. Indeed, the deposits during this period totaled approximately $2.5 million, with one large deposit being made on November 28 at about 2:15 pm. IB instituted

its company-based freeze at approximately 5:15 pm that same day.

The Receiver has recommended November 28, 2007 as the appropriate cut-off date for customers with IB accounts because that is the date on which Mr. Rolando lost control of those accounts. The Receiver proposes a *pro rata* distribution of all funds and therefore, those customers who made deposits between November 13 and November 28 would receive back only a portion of the deposits they made during that period. The objecting customers believe that the appropriate cut-off date for the *pro rata* distribution should instead be November 13, 2008, and that any customer who deposited funds with IB's bank between November 13, 2007 and November 28, 2007 should receive 100% of the funds deposited during that time period. The objector's rationale is that as of November 13, IB knew that Mr. Rolando's accounts and trading were suspicious, at the very least, and that as a result of IB's actions on November 13, the objectors could not have withdrawn their funds without difficulty. They hasten to add, however, that none of them sought to withdraw their funds between November 13 and November 28.

The Court is sympathetic to the objectors but does not believe that the cut-off date should be changed to November 13. If anything, the cut-off date probably should be the date of the Court's Statutory Restraining Order, January 15, 2008, though that would not help the objecting investors and in the case of IB, it does not matter whether January 15, 2008 or November 28, 2007 is chosen since there was no activity in the IB accounts associated with Mr. Rolando after November 28. Inevitably, those who invested on the last day before a fraudulent scheme is shut down will always feel slighted by the fortuity of when the scheme is shut down. But during the time period in question, Mr. Rolando made withdrawals, effectuated fraudulent transfers, and accepted deposits from those whom he continued to defraud suing the same scheme he had used from day one. Those

3

who gave Mr. Rolando funds on day one of his scheme and those who gave him funds on the last day, or even the last hour, were equally defrauded by Mr. Rolando. They relied on the same false representations by Mr. Rolando and should all share on a *pro rata* basis in all of the funds recovered by the Receiver. *See, e.g.*, *SEC v. Infinity Group Co.*, 226 Fed. App'x 217 (3d Cir. 2007).

The objectors argue that IB should not have accepted their deposits if they suspected Mr. Rolando's fraud. But they will be able to advance that argument in a lawsuit against IB that is currently pending before this Court. Even if the Court were to accept the objectors' claim – and the Court hastens to say it has made no such determination – there is no reason why the other customers of Mr. Rolando should suffer for an error that the objectors blame on IB. Certainly no case even remotely suggests that.

4.      **Objection of Certain Non-IA Trading Investors.**  Two individuals – Jose Luis Marmol and Enrique Fabian Dellagiovanna – contend that they invested funds with Mr. Rolando and should receive a distribution under the Plan. However, based upon his thorough investigation, the Receiver has concluded that these two individuals did not invest through IA Trading but rather invested through another individual, Mr. Tarditti, and that if the objectors have a claim for any funds, they should seek them from Mr. Tarditti, whom the Receiver believes lied to him during the investigation. The Court has carefully reviewed the objections of these two investors and agrees with the Receiver's resolution of their claims.

5.      **Objection Relating to a Disputed Portion of a Claim.** Certain investors object that if they dispute only a portion of a claim, the Receiver should not withhold the entire claim until the dispute is resolved but should, instead, make a partial distribution on the portion of the claim that is not disputed, while working to resolve the portion of the claim that is disputed. The Receiver

4

agrees with this proposal, and the Court revised the Order approving the Plan to permit the Receiver to make distributions in those circumstances.

6.     **Objection to *Pro Rata* Distribution.**  One of those defrauded by Mr. Rolando objects to the Receiver's recommendation that the funds be distributed on a *pro rata* basis.  This investor believes that his deposits are traceable to a particular account at IB and that he is entitled to 100% of the amounts in that account, not his *pro rata* share of the overall funds.  The CFTC supports the Receiver's recommendation for a *pro rata* distribution, and the Court believes it is notable that only one investor objects to the *pro rata* distribution proposed by the Receiver.

In making this determination, the Court acts as a court of equity and seeks to do justice in the circumstances for all of the defrauded investors.  *See SEC v. Credit Bancorp, Ltd.*, 290 F.3d 80, 88-90 (2d Cir. 2002); *SEC v. Forex Asset Mgmt., LLC*, 242 F.3d 325, 331 (5th Cir. 2001).  As a general matter, courts have favored *pro rata* distribution of assets where victims were similarly situated with respect to the defrauder.  *See, e.g., Credit Bancorp*, 290 F.3d at 89 (collecting cases). The reason for this is that equitable theories of relief are generally premised on the wrongdoing of the defrauding party.  *See SEC v. Merrill Scott & Assoc., Ltd.*, No. 2:02CV39, 2007 WL 26981, at * 5 (D. Utah Jan. 3, 2007).  As the Fifth Circuit explained in *United States v. Durham*, 86 F.3d 70 (5th Cir. 1996), it would be "inequitable to allow [one investor] to benefit merely because the defendants spent the other victim's funds first . . . all fraud victims were in equal positions and should be treated as such."  *Id.* at 73. The Eleventh Circuit has similarly explained the judicial preference for *pro rata*  distributions: "As all of the former securities owners occupied the same legal position, it would not be equitable to give some of them preferential treatment in equity.  In fact, the equities weigh against allowing some to benefit from the fortuity that [the defrauding party]

had not sold all of the securities." *SEC v. Elliott*, 953 F.2d 1560, 1570 (11th Cir. 1992).

Here, the Court is convinced that a *pro rata* distribution is the most equitable remedy for Mr. Rolando's fraud for several reasons.  First, all investors, including the one who objects to a *pro rata* distribution, ceded control of their money to Mr. Rolando.  Second, Mr. Rolando marketed his investment scheme as making investment decisions that would be made for the group as a whole. The investors, all of whom were defrauded in a similar way,  thus understood that they shared a common fortune and fate.  *See CFTC v. Eustace*, No. 05-2973, 2008 WL 471574, at * 8 (E.D. Pa. Feb. 19, 2008) ("The Court also finds Eustace's joint marketing of the funds to be relevant because it encouraged investors to perceive the funds as a part of a whole.").   Third, the accounts were opened at IA Trading, the fraud vehicle, not at IB, as the objector asserts.  Contrary to the allegations of the objector, investors did not control their IB accounts. Mr. Rolando did.  And investors did not receive account statements from IB.  They received phony statements form Mr. Rolando. Fourth, the form investors signed with IA Trading gave Mr. Rolando power of attorney over the investor's funds and allowed him to act for the investors, including the objecting investor.  Fifth, that the objector may be able to trace his account to IB is mere fortuity; others who were similarly defrauded by Mr. Rolando should not be punished because of that happenstance.  Otherwise, recoveries would be skewed based on fortuity even though everyone was defrauded in the same manner.  *See Elliott*, 953 F.2d at 1570.

In sum, this Court agrees with the explanation for a *pro rata* distribution provided by the district court in *Merrill Scott*:

> Although the specific details of each client's dealings with Merrill Scott may vary, the end result is the same: Merrill Scott misrepresented the manner in which it would handle the funds it received, it misrepresented the amount of control the client would retain over transferred assets, and the client suffered as a result.   Given this

fundamental similarity between all Merrill Scott clients, it would defeat the purposes of the receivership to allow certain claimants to gain equitable relief at the expense of other claimants. Accordingly, all objections based on theories of beneficial ownership of certain assets or assertions that tracing should be allowed must be rejected in favor of a pro rata distribution where all victims of Merrill Scott are treated equally.

2007 WL 26981, at * 6. Accordingly, the Court overrules the objection and approves of the

Receiver's recommendation for a *pro rata* distribution of the funds recovered by the Receiver.


IT IS SO ORDERED,



/s/      Mark R. Kravitz_____
         United States District Judge



**Dated at New Haven, Connecticut: December 10, 2008**.